IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| ELSA FABIOLA MEJIA, | Civ. No. 2:18-cv-01903-SU |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| LAMB WESTON, INC., | |
| Defendant. | |

SULLIVAN, Magistrate Judge.

Plaintiff Elsa Fabiola Mejia brings this action against her employer, Defendant Lamb Weston, Inc., alleging claims for workers' compensation discrimination, disability discrimination, failure to reemploy or reinstate, and denial of protected family leave following a workplace injury. This matter comes before the Court on a Motion for Summary Judgment filed by Defendant. ECF No. 9. The Court heard oral argument on the motion on November 8, 2019. ECF No. 22. All parties have consented to magistrate jurisdiction. ECF Nos. 23, 24, 25. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

**LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is

such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Plaintiff Elsa Fabiola Mejia began working for Defendant Lamb Weston, Inc. on March 11, 2014. Am. Compl. ¶ 4, ECF No. 1-1. In 2016, she was employed as a process operator, often working night shifts. Jagelski Decl. Ex J, at 31, ECF No. 12-10.

The job description for a process operator shows it to be a physically demanding job overseeing the operation of large potato-processing machines. Cooper Decl. Ex. I. ECF No. 10. In her deposition, Plaintiff testified that her work required her to unplug potato-processing lines, open machinery chambers, shovel spilled product into carts, clean the floors, push large carts around the floor, climb stairs, use ladders, and clean floors. Jagelski Decl. Ex. J, at 10-28

On May 10, 2016, Plaintiff's right hand was injured on the job. Compl. ¶ 5. She attempted to unplug a jammed piece of equipment, which unexpectedly clamped down on her hand. Jagelski Decl. Ex. J, at 2-3. She reported her injuries to the plant nurse, but declined further treatment and returned to work. Cooper Decl. ¶2; Ex. A. With the exception of two days

off to care for a sick child, she worked her normal schedule for the next three weeks. Cooper Decl. ¶ 3.

On June 3, 2016, Mike Cooper, Defendant's Human Resources Manager, learned that Plaintiff had seen a doctor and that she had opened a short-term disability claim. Cooper Decl. ¶ 4. Plaintiff's doctor released her to work from June 2, 2016, with the limitation of no use of her right hand. Cooper Decl. Ex. D at 3. Plaintiff was to be re-evaluated on June 6, 2016. *Id.* On June 9, 2016, Plaintiff's doctor released her for light duty work for three weeks with no right-hand use. Cooper Decl. Ex D, at 4.

Plaintiff reported for work on June 10, 2016. Cooper Decl. ¶ 7. Defendant attempted to accommodate Plaintiff's limitations by assigning her general labor work, primarily inspecting bags on the trim line, which could safely be done with one hand. *Id.* Plaintiff declined the general labor work. *Id.* at ¶ 8.

On June 30, 2016, after the one hand restriction expired, Plaintiff was offered a temporary modified duty agreement to work on the trim line in order to accommodate a limitation restricting Plaintiff from shoveling or lifting fifteen pounds on a more than occasional basis. Cooper Decl. Ex. E at 1. On July 1, 2016, Plaintiff declined because she indicated the trim line was too difficult and caused swelling in her hand. *Id.* at 2.

Plaintiff's doctor excused her from work beginning on July 1, 2016, and that no-work limitation was extended until November 2016. Cooper Decl. Ex. D at 5-9. On November 11, 2016, Plaintiff was released back to work but limited to using only her left hand with weight limitations. *Id.* at 10. Those restrictions continued for over a year until Plaintiff was cleared to return to work on December 15, 2017, following surgery in November 2017. *Id.* at 10-15.

Plaintiff received workers' compensation payments alternating between partial and total temporary disability from June 2, 2016, through January 16, 2017. Cooper Decl. Ex. F. Plaintiff was declared medically stationary on January 16, 2017, and her workers' compensation case closed on February 22, 2017. *Id.* However, as noted, Plaintiff remained under physician-ordered restrictions limiting the use of her right hand until December 15, 2017. Cooper Decl. Ex. D at 12-15.

On February 24, 2017, after her workers' compensation claim closed, Plaintiff contacted Defendant to ask if alternative positions were available. Cooper Decl. ¶ 10; Vall-llobera Decl. Ex. 1, at 63-64, ECF No. 16-1. Defendant did not have any work available that Plaintiff could perform one-handed at that time. Cooper Decl. ¶ 11. In her deposition, Plaintiff testified that she understood this to mean that she had been terminated, although Defendant never told Plaintiff that she had been terminated. Vall-llobera Decl. Ex. 1, at 63-64. Defendant's records reflect that Plaintiff was on unpaid medical leave throughout 2017. Cooper Decl. Ex. B, at 4-10.

Defendant paid for 80% of Plaintiff's medical insurance premiums from the day she was hired until March 2017. Cooper Decl. ¶ 15. After her workers' compensation claim was closed in February 2017, Plaintiff stopped making her 20% contribution, and her insurance was cancelled in March 2017. *Id.*

As noted, Plaintiff underwent surgery in November 2017 and was released to full duty on December 15, 2017. Cooper Decl. Ex. D, at 14-15. On December 6, 2017, Plaintiff met with Cooper to discuss her return to work. "Various positions on different shifts were discussed and [Plaintiff] expressed interest in the Lab Tech position." Cooper Decl. ¶ 12. Because of her seniority within the company, Plaintiff was able to move to the day shift as a lab tech. *Id.* at ¶13.

The record indicates that Plaintiff continues to be employed with Defendant as a lab tech and that she now earns slightly more in that position than she earned as a process operator before her injury. Cooper Decl. ¶ 14.

## DISCUSSION

Plaintiff brings claims for (1) workers' compensation discrimination in violation of ORS 659A.040; (2) failure to reemploy in violation of ORS 659A.046; (3) failure to reinstate in violation of ORS 659A.043; (4) disability discrimination in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101; (5) violation of the Oregon Family Leave Act ("OFLA") ORS 659A.183; (6) disability discrimination in violation of the Oregon Rehabilitation Act, ORS 659A.112; and (7) unlawful discrimination for using legal procedures to protect against disability discrimination in violation of the Oregon Rehabilitation Act, ORS 659A.109. Defendant moves for summary judgment on all claims.

### I. Plaintiff's First Claim: Discrimination for Seeking Workers' Compensation Benefits

Plaintiff's first claim alleges discrimination against a worker seeking workers' compensation benefits, in violation of ORS 659A.040. This claim requires an employee to show (1) that the employee invoked the workers' compensation system; (2) that the employer discriminated or retaliated against the employee in hiring, tenure, terms, or conditions of the employee's employment; and (3) that the employer discriminated or retaliated against the employee because she invoked the workers' compensation system. *Davis v. Tri-County Metro. Transp. Dist.*, 45 F. Supp.3d 1222, 1238 (D. Or. 2014).

In assessing claims under ORS 659A.040, federal courts apply the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

*Snead v. Metro. Prop. Cas. Ins. Co.*, 237 F.3d 1080, 1090-94 (9th Cir. 2001); *Davis*, 45 F. Supp.3d at 1238. Under *McDonnell Douglas*, after a plaintiff proves a prima facie case of retaliation, the employer must present evidence of a legitimate, non-discriminatory reason for the adverse action. *Snead*, 237 F.3d at 1093-94. If the employer meets this burden, the onus shifts back to the plaintiff to show that the non-retaliatory reason given by the employer is merely a pretext for discrimination. *Id.*

In the present case, the parties do not dispute that Plaintiff invoked the workers' compensation system following her on-the-job injury. Defendant contends that Plaintiff cannot meet the remaining elements of the claim because she did not suffer an adverse employment action.

Courts within this District have found that ORS 659A.040 is "substantively an anti-retaliation statute, because it seeks to protect employees for what they do—their conduct in invoking or otherwise utilizing Oregon's worker's compensation system—and not for who they are." *Davis*, 45 F. Supp.3d at 1240. There is some division of opinion, however, as to the consequences of that distinction. In *Anderson v. Hibu, Inc.*, 26 F. Supp.3d 1019 (D. Or. 2014), the court adopted a broad interpretation, holding that to show an "adverse employment action," a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from applying for benefits or invoking the procedures provided for in ORS chapter 656." *Id.* at 1026. In *Davis*, by contrast, the court noted that the plain terms of ORS 659A.040 require discrimination specifically "with respect to hire or tenure or any term or condition of employment." *Davis*, 45 F. Supp.3d at 1241; ORS 659A.040(1). "To qualify as adverse, the action must be more disruptive than a mere inconvenience or alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease

in wage or salary, a less distinguished job title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Marrazzo v. Leavitt*, 719 F. Supp.2d 1297, 1307 (D. Or. 2010) (quoting *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). However, "[p]otentially adverse employment actions that are not final or lasting are insufficient to constitute actionable adverse actions." *Id.*

Plaintiff contends that she was terminated after her workers' compensation claim was closed on February 22, 2017.[1] In her deposition, Plaintiff testified that she called Defendant after February 24, 2017, and asked for work but was told that there were no available positions that were consistent with her limitations. Vall-llobera Decl. Ex. 1, at 63-64; Olson Decl. Ex. K, at 3-6, ECF No. 19. When asked if she was told she had been fired, Plaintiff testified that she was terminated "not by words, but by acts." *Id.* Plaintiff testified that she was not given a final paycheck by Defendant, Olson Decl. Ex. K, at 7, and Defendant's records reflect that Plaintiff was on unpaid medical leave throughout 2017. Cooper Decl. Ex. B, at 4-10. Plaintiff was also given a letter telling her to keep in contact with Defendant's H.R. department. Olson Decl. Ex. K, at 3. It seems that Plaintiff subjectively believed that she had been terminated from her employment after February 24, 2017, but the record shows that she had not, in fact, been terminated. On this record, the Court concludes Plaintiff did not suffer an adverse employment action.

Even assuming Plaintiff had suffered an adverse employment action, Defendant has presented evidence that the failure to offer Plaintiff a position after her workers' compensation claim closed was due to a lack of available positions that could safely accommodate Plaintiff's

---

[1] In her Amended Complaint, Plaintiff appears to allege that her transfer to less desirable positions following her injury constituted retaliation and discrimination. In its Motion for Summary Judgment, Defendant points out that these transfers were temporary and meant to accommodate Plaintiff's post-injury limitations. In her Response, Plaintiff only argues that her alleged termination constituted an adverse employment action. The Court construes this as a tacit concession by Plaintiff and so confines its analysis to the alleged termination. *See, e.g., Bolbol v. City of Daly City*, 754 F. Supp.2d 1095, 1115 (N.D. Cal. 2010) (a plaintiff concedes an issue by failing to address it in an opposition brief on summary judgment).

ongoing medical restrictions. Under *McDonnell Douglas*, the burden shifts to Plaintiff to show that Defendant's proffered explanation is a pretext for unlawful discrimination or retaliation. Plaintiff has failed to meet this burden. "[M]erely expressing a belief that an employer's actions are improper without providing additional evidence supporting that belief is not enough to present a triable issue of material fact." *Lanyon v. Interfor U.S., Inc.*, Case No. 1:16-cv-2058-MC, 2018 WL 1976023, at *4 (D. Or. April 26, 2018). The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's first claim.

II. **Plaintiff's Second and Third Claims: Failure to Reinstate or Reemploy**

ORS 659A.043 and ORS 659A.046 provide reinstatement and reemployment rights to workers with compensable injuries.

> Those statutes mandate that, upon demand, a worker who sustains a compensable injury shall be reinstated to the worker's former position (if it exists and is available) or an existing vacant and suitable position if the worker is not disabled from performing the duties of those positions, ORS 659A.043(1), or reemployed at another available and suitable position if the worker is disabled from performing the duties of the worker's former regular employment, ORS 659A.046. Any such reinstatement or reemployment is subject to seniority rights and other employment restrictions in collective bargaining agreements (ORS 659A.043(2); ORS 659A.046(4)) and terminates three years from the date of injury or sooner if the worker participates in vocational assistance under ORS 656.340, accepts suitable employment with another employer after becoming medically stationary, or refuses a bona fide offer of suitable light duty or modified employment prior to becoming medically stationary (ORS 659A.043(3)(a); ORS 659A.046(3)). Violation of either statute is an unlawful employment practice. ORS 659A.043(5); ORS 659A.046(6).

*Lane v. Hood River Cnty.*, No. 08-CV-428-ST, 2009 WL 1662990, at *9 (D. Or. June 11, 2009).

In order to state a prima facie case of failure to reemploy under ORS 659A.046, an employee must show that (1) the employee suffered a compensable on-the-job injury; (2) the employee was disabled from performing the duties of her former position; (3) the employee made a timely demand for reemployment; (4) at the time of that demand a suitable position was available; and (6) the employer failed to reemploy the employee in the available suitable position. *Davis*, 45

F. Supp.3d at 1243. The test for reinstatement under ORS 659A.043 is "substantially similar." *Smith v. Consol. Pers. Corp.*, No. 98-969-AS, 2000 WL 294076, at *5 (D. Or. Jan. 27, 2000).

In this case, the job description for Plaintiff's original position as a processing operator reflects that it was a physically demanding job that required the use of both hands. Cooper Decl. Ex. I. In her deposition, Plaintiff testified that there were aspects of the position, like resolving plugs, pushing heavy carts, climbing ladders, or shoveling, that required the use of both hands. Jagelski Decl. Ex. J, at 10, 17-24, 28. After her on-the-job injury, Plaintiff was not able to use her right hand and so no longer able to perform those tasks.

Plaintiff's workers' compensation benefits ended on January 16, 2017, and her workers' compensation claim was closed on February 22, 2017. Cooper Decl. Ex. F. Although Plaintiff sought to return to work at that point, she had a non-compensable injury that prevented her from using her right hand through December 15, 2017. Cooper Decl. Ex. D, at 10-15. With those restrictions, Plaintiff could not perform the functions of her original position and so could not be reinstated.

As previously noted, ORS 659A.043(1) requires that if an employee's original position is not available, she be reinstated in a position that is "vacant and suitable." ORS 659A.046(1) provides that if an employee is, like Plaintiff, disabled from performing the duties of her prior position, she shall be reemployed "at employment which is available and suitable."

As discussed in the previous section, Plaintiff contacted Defendant on February 24, 2017, to ask about alternative employment. Vall-llobera Decl. Ex. 1, at 63-64; Olson Decl. Ex. K, at 3-6. Defendant has presented evidence that it did not have any available positions that could be performed with one hand at that time. Cooper Decl. ¶ 11. Plaintiff has not presented any contrary evidence to demonstrate the existence of a position that was "vacant and suitable" or "available

and suitable." Accordingly, the Court concludes Defendant is entitled to summary judgment on Plaintiff's second and third claims.

### III. Plaintiff's Fourth, Sixth, and Seventh Claims: Disability Discrimination under the ADA and the Oregon Rehabilitation Act

Plaintiff's fourth claim, for disability discrimination under the ADA, 42 U.S.C. § 12101, and her sixth and seventh claims, for disability discrimination under the Oregon Rehabilitation Act, ORS 659A.109 and ORS 659A.112, are closely interrelated. In all three claims, Plaintiff alleges Defendant failed to engage in an interactive process with her to find accommodations that would allow her to return to work, either in her original position or in another position.

Both the ADA and the Oregon Rehabilitation Act prohibit discrimination on the basis of disability in hiring, advancement, compensation or other terms and conditions of employment. *See* 42 U.S.C. § 12112(a) (prohibiting discrimination on the "basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); ORS 659A.112(1) ("It is unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability.").

To state a prima facie case of employment discrimination under § 12112, a plaintiff must allege (1) that she is "disabled" within the meaning of the ADA; (2) she is a "qualified individual" as defined by the ADA; and (3) she suffered an adverse employment action on the basis of her disability. *Davis*, 45 F. Supp.3d at 1246 (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). "A plaintiff must establish that the defendant's actions were motivated, at least in part, by an unlawful discriminatory (or retaliatory) animus." *Kelly v. Boeing Co.*, 400 F.

Supp.3d 1093, 1107 (D. Or. 2019) (citing *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)).

The Oregon Rehabilitation Act, ORS 659A.103 to 659A.144, is to be "construed to the extent possible in a manner that is consistent with any similar provision of the federal Americans with Disabilities Act of 1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended." ORS 659A.139(1). In practical terms, this means that "[t]he standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law." *Snead*, 237 F.3d at 1087. Plaintiff's sixth claim, for violation of ORS 659A.112, and her seventh claim, for violation of ORS 659A.109, therefore follow the same analysis as Plaintiff's ADA claim.

The *McDonnell Douglas* burden-shifting framework, discussed in a previous section, applies to claims under the ADA and the Oregon Rehabilitation Act. *See, e.g., Kelly*, 400 F. Supp.3d at 1107 ("The Court applies the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green* to ADA and Oregon disability discrimination and retaliation claims." (internal quotation marks and citation omitted)).

First, Defendant contends Plaintiff's hand injuries, both the on-the-job injury that was deemed resolved in January 2017 and the non-work-related injury that prevented Plaintiff from using her right hand before December 2017, were not "disabilities" within the meaning of the ADA and the Oregon Rehabilitation Act. It is not necessary, however, for the Court to resolve this issue because, as discussed in the previous section, Plaintiff did not suffer an adverse employment action.

Although Plaintiff believed that she had been terminated when Defendant told her there were no available positions that could accommodate her limitations, the record shows that Plaintiff

remained on medical leave. Even if Plaintiff were able to establish a prima facie case, Plaintiff has not presented any evidence that Defendant's stated reasons for not allowing her to resume her work as a process operator were pretextual and so her ADA and Oregon Rehabilitation Act claims fail under the *McDonnell Douglas* analysis. The Court therefore concludes Defendant is entitled to summary judgment on Plaintiff's fourth, sixth, and seventh claims.

IV.     **Plaintiff's Fifth Claim: The Oregon Family Leave Act**

The Oregon Family Leave Act ("OFLA") prohibits an employer from denying family leave to any eligible employee or from retaliating or discriminating against an individual because the individual inquired about the provision of the OFLA, submitted a request for family leave, or invoked any provision of the OFLA. ORS 659A.183. Under the OFLA, an eligible employee who returns to work after taking family leave is entitled to be restored to the position she held when the leave commenced, if that position still exists. ORS 659A.171(1). Additionally, if an employee is provided with group health insurance, the employee is entitled to the continuation of group health insurance during the period of leave on the same terms as if the employee had continued to work, although the employee must continue to make contributions to the cost of the health insurance premiums. ORS 659A.171(5)(b). In the absence of damages, a claim under the OFLA fails. *Doby v. Sisters of St. Mary of Oregon*, No. 3:13-cv-0977-ST, 2014 WL 3943713, at *10 (D. Or. Aug. 11, 2014).

In the present case, Plaintiff alleges that she was denied OFLA leave for the period between the closure of her workers' compensation claim in February 2017 and when her doctor declared her able to return to work in December 2017. The parties dispute whether Plaintiff was entitled to OFLA leave in February 2017, but it is not necessary to resolve the question of Plaintiff's

eligibility because Defendant did not deny Plaintiff any benefit to which she would have been entitled under the OFLA.

As noted, Plaintiff was not terminated after her workers' compensation claim closed and remained on Defendant's books as being on unpaid medical leave due to her continuing medical limitations. Plaintiff argues that she could have worked in alternative positions between February 2017 and December 2017, but the only evidence in the record shows that Defendant had no available positions that could be worked with one hand. Once Plaintiff was cleared to return to work in December 2017, Defendant discussed possible positions for Plaintiff and she chose her current position in the lab, in part because Plaintiff's seniority with the company entitled her to work the day shift in the lab. Cooper Decl. ¶¶ 12-13; Jagelski Decl. Ex. J, at 4-6.

As for Plaintiff's medical insurance coverage, the OFLA requires that the employee "continue to make any regular contributions to the cost of the health insurance premiums." ORS 659A.171(5)(b). In this case, Defendant never refused to maintain Plaintiff's group health insurance coverage and continued to pay its potion of the premium amount until Plaintiff's defaulted on her contribution in March 2017. Cooper Decl. ¶¶ 15-16. Such a default would have excused Defendant from continuing to pay its portion of the premium, even under the OFLA.

On this record, the Court concludes that Plaintiff suffered no damages as a result of the alleged failure to provide OFLA leave. Plaintiff's OFLA claim therefore fails and Defendant is entitled to summary judgment on this claim.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 9, is GRANTED and final judgment shall be entered accordingly.

It is so ORDERED and DATED this <u>22nd</u> day of January, 2020.

<u>/s/ Patricia Sullivan</u><br>
Patricia Sullivan<br>
United States Magistrate Judge